Lauren E. GRIGGS et al.

v.

ESTATE OF Glenn E. GRIGGS.

No. 2002–611–Appeal.

Supreme Court of Rhode Island.

April 9, 2004.

This case came before the Supreme Court for oral argument on February 3, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Superior Court.

David J. Strachman, Esq., Providence, for Plaintiff.

Lauren E. Jones, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

This case involves a petition filed by Lauren E. Griggs (Lauren) and Christine A. Peabody (Christine)[1] (collectively referred to as petitioners), for guardianship of their father, Glenn E. Griggs (Mr. Griggs). After a judge of the Probate Court in the City of Warwick denied the petition, the petitioners appealed to the Superior Court, where their petition was denied on different grounds. The petitioners now have appealed to this Court.

# I

### Facts and Travel

To understand the nature of this case it is important to discuss the relationships among the parties.[2] Mr. Griggs has been married and divorced three times and is the father of six children, although he and his third wife, Carol R. Kimberly Griggs (Carol), had no children together. The petitioners are two of Mr. Griggs's daughters, Christine from his first marriage and Lauren from the second. Deborah Griggs (Deborah), one of Mr. Griggs's other daughters intervened to contest the petition.

In October 2000, petitioners filed a petition with the Probate Court seeking appointment of a guardian for their father pursuant to G.L.1956 chapter 15 of title 33. Unbeknownst to Mr. Griggs, petitioners had him evaluated by Dr. John Stoukides, M.D. (Dr. Stoukides), a physician they had hired to assess and report on Mr. Griggs's competency.[3] Doctor Stoukides signed a

1. The Court does not wish to disrespect any of the parties. First names are used because many of the parties share the same last name.

2. The petitioners have provided very few facts on appeal. Thus, many of the facts relating to the relationships between the parties and their non-legal actions have been taken from the intervenors' brief. The petitioners have

neither contested nor accepted the truth of these facts.

3. The intervenors assert that Dr. Stoukides met with Mr. Griggs on only one occasion, for fifteen minutes, in the parking lot of Dr. Stoukides' offices. They contend that Mr. Griggs was brought to this "meeting" under false pretenses and was never made aware of

decision-making assessment tool (DMAT) in which he determined that Mr. Griggs exhibited "poor" decision-making ability about his finances, health care, relationships, and residential matters. Armed with the DMAT, petitioners went forward with their petition for guardianship and served Mr. Griggs with the requisite notice.

Once Mr. Griggs was made aware of petitioners' intentions, he and Deborah (collectively referred to as intervenors) objected to the petition. The Probate Court appointed a guardian ad litem, as required by § 33–15–7, who evaluated Mr. Griggs on November 7, 2000. The guardian ad litem found "that there [were] some estate planning tools in effect * * *" and, "[a]ssuming enough of the less restrictive alternatives are already in place and valid, there might well be no need for a guardianship." The guardian ad litem concluded that he was not privy to the estate-planning tools but, after additional medical inquiry, the less restrictive options could make guardianship unwarranted.

A number of hearings were held before the Probate Court judge, although no court-appointed stenographer recorded the proceedings. Pursuant to G.L.1956 § 33–22–19.1, however, Mr. Griggs hired a private stenographer to record the hearings.

Relying exclusively on the estate-planning documents,[4] the Probate Court judge concluded that Mr. Griggs did not need a guardian. In an order dated July 3, 2001 (order), the Probate Court denied the petition for guardianship, stating that "without having reached or determined the issue of competency, an issue which was contested, the court has determined less restrictive means are available * * *." Intending to

appeal the Probate Court decision, petitioners obtained a certified copy of a portion of the record (certified record) from the Probate Court clerk on the same day the order was executed. On July 20, 2001, petitioners filed their appeal.

On August 2, 2001, petitioners filed a request for a thirty-day extension to submit "the entire record of the proceedings * * * in the event it is determined that the Probate Clerk failed to copy the complete record of the proceedings appealed from." A Superior Court justice granted the motion, but petitioners neither submitted nor requested additional records within thirty days.

Beginning in November 2001, the parties met before a Superior Court motion justice on a number of occasions to discuss discovery. The petitioners sought twenty-five sets of documents relating to their father's finances, but the motion justice hesitated to order the disclosure of such personal information without more support for petitioners' contention that Mr. Griggs needed a guardian. While the parties were wrangling over discovery, the intervenors filed a motion to dismiss for petitioners' failure to file a complete certified record with the Superior Court.

On January 14, 2002, the motion justice heard the intervenors' motion to dismiss and concluded that "[t]here's no question but that the documents included in the [July] 3rd package, did not include the complete record; did not include all documents filed in the Probate Court. It didn't include transcripts that were filed." The matter was continued until January 28, 2002, to allow petitioners time to confer with their former attorney about whether

---

the fact that he was being evaluated. For the reasons discussed below, we do not rely on Dr. Stoukides' assessment.

**4.** The estate planning documents have since been sealed to protect Mr. Griggs's privacy.

he had ordered the complete record.[5] Ultimately, the motion justice interpreted G.L.1956 § 33–23–1(b) to allow a Superior Court justice to exercise her discretion in permitting a subsequent addition to the record. Thus, the intervenors' motion to dismiss petitioners' appeal was denied and petitioners were given additional time to file what might be missing from the record. At that time, petitioners filed a request with the Probate Court to transmit any additional records to the Superior Court. A sealed box from the Probate Court was received by the Superior Court on February 28, 2002.

At a later discovery hearing, the motion justice asked whether the petition even should be considered since it appeared that petitioners had failed to submit a DMAT completed by Mr. Griggs's treating physician as required by § 33–15–4.[6] The intervenors then filed a motion to dismiss petitioners' appeal on those very grounds, and the motion was granted. The petitioners timely appealed to this Court.

## II

### § 33–23–1

The first issue we encounter is whether petitioners' appeal properly was before the Superior Court. We review "*de novo* questions of law and statutory interpretation, including the question of whether a statute of limitations has run against a [petitioner's] claim." *Kelley v. Jepson,* 811 A.2d 119, 121 (R.I.2002) (per curiam).

The petitioners brought their appeal to the Superior Court pursuant to § 33–23–1, which requires anyone appealing to the Superior Court from a Probate Court order or decree to file the claim of appeal with the Probate Court within twenty days of the execution of the order or decree. Section 33–23–1(a)(1). The appellant then has thirty days from the execution of the order to file a certified copy of the claim, the record and reasons for appeal with the Superior Court. Section 33–23–1(a)(2). Pursuant to the statute, an extension of the deadlines set forth in § 33–23–1(a)(1) and (2) shall be granted only when the appellant has requested transcripts from the Probate Court within twenty days of the appeal but the transcripts are not available within the thirty-day deadline. Section 33–23–1(c) and (e). Section 33–23–1(e) makes clear that the deadlines in § 33–23–1(a)(1) and (2) are jurisdictional and may not be extended " 'by a sympathetic trial justice.' " *In re Estate of Speight,* 739 A.2d 229, 231 (R.I. 1999).

The petitioners were given two opportunities to expand the record. First, they were granted a thirty-day extension of the initial deadline to file anything that might be missing from the record. The motion justice then allowed petitioners to make additions to the record. We address the first erroneous extension now. The order from which petitioners appealed was executed on July 3, 2001. On August 2, 2001, exactly thirty days later, petitioners filed a copy of the claim, a portion of the record

---

**5.** According to the record before us, petitioners' former attorney said he did not ask the Probate Court clerk to limit the certified record. The Probate Court clerk submitted an affidavit upholding petitioners' assertion. The Assistant Probate Court clerk said petitioners' counsel requested certified copies of the papers on file with the court, with the exception of the transcripts.

**6.** General Laws 1956 § 33–15–4(a) provides in pertinent part: "(2) A decision making assessment tool * * * must be filed with the petition in each case. (3) The individual's treating physician must complete the decision making assessment tool."

and the reasons for appeal as required by § 33–23–1. The petitioners also submitted a request for an extension of time to file any items that may have been missing from the record, saying that they had "been unable to determine whether they received from the Probate Court Clerk the entire record of the proceedings * * *." That request was granted and the deadline was extended thirty days. This extension should not have been granted. Section 33–23–1(e) leaves no doubt about the Legislature's intent, and this Court has already concluded that "[t]he deadline of subsections (a)(1) and (a)(2) of [§ 33–23–1] are *jurisdictional and may not be extended by either the probate court or the superior court*, except for purposes of extending the time to file the transcript under subsection (c)." *Kelley*, 811 A.2d at 123 (quoting § 33–23–1). (Emphasis added in *Kelley*.) Thus, the initial thirty-day extension should not have been granted.[7]

 This brings us to the question of what must be included in the record to perfect an appeal pursuant to § 33–23–1. Pursuant to the statute, the record to be transmitted to the Superior Court "shall include copies of documents filed with the probate court and certified by the probate clerk which are relevant to the claim of appeal * * *." Section 33–23–1(b). The record should also include relevant transcripts, if any. *Id.* The parties are permitted to stipulate to a limited or shorter record. *Id.* If a Superior Court justice finds that additional information is needed, then the justice "may require or permit subsequent corrections or additions to the record." *Id.* A Superior Court justice's authority to permit additions or corrections to the record is contingent on the appealing party's filing a substantial record at the outset. The transmitted record

is sufficient if it will allow the Superior Court to pass on each issue raised in the appeal. *See Savoy Realty Corp. v. LPL, Inc.*, 121 R.I. 962, 962, 401 A.2d 61, 61 (1979) (mem.) (noting that the Supreme Court "ordinarily will not decide matters presented to us unless there has previously been transmitted to us so much of the record of the tribunal below as may be necessary to enable us to pass on the question at issue"). Section 33–23–1(b) should not be interpreted as a loophole allowing inattentive parties to perfect the appeal by initially supplying the court with a smattering of documents, then supplementing the record later in the proceedings. The statute makes clear that a party must submit the portion of the record that is relevant to the appeal within thirty days of the entry of an order or decree. *Id.* Only after a substantial portion of the relevant documents have been filed will the appeal be perfected, and a motion justice then can consider whether any additions or corrections are needed.

 In ruling on intervenors' motion to dismiss because of petitioners' failure to submit a complete record, the motion justice noted that "the Supreme Court is not particularly liberal with reference to permitting probate court appeals unless the 'I's' are dotted and the 'T's' are crossed, * * *" but still found that it was within her discretion to allow additions to be made to the record. Although it is within a Superior Court justice's discretion to enlarge the record, we conclude that in this case the motion justice erred in allowing the additions by failing to determine, as a preliminary matter, whether petitioners had filed enough of the record from the Probate Court to perfect the appeal. We consider this issue now and determine

---

7. We note that, even armed with the erroneous extension, petitioners failed to submit the entire record to the Superior Court within thirty days.

that, for the following reasons, petitioners had not perfected the appeal. Therefore, the motion justice erred by failing to grant intervenors' motion to dismiss.

On appeal to the Superior Court, petitioners contested many of the rulings made by the Probate Court. Without addressing each of petitioners' reasons for appeal, we consider their focus on the documents that were sealed by the Probate Court. In their reasons for appeal, petitioners stated that "[t]he Probate Court sealed and denied Petitioners access to certain records * * *," including documents relating to Mr. Griggs's health, his finances, and information upon which the Probate Court judge relied in denying the guardianship petition because "less restrictive alternatives" existed. Despite petitioners' argument that they should have had access to the documents that were sealed by the Probate Court, petitioners waited nearly six months from the date the Probate Court executed the order denying their application to request that the remaining records, which included the sealed records, be transmitted to the Superior Court. Clearly, the sealed documents were relevant to petitioners' appeal, so petitioners were obligated to have those documents transmitted to the Superior Court within thirty days of the Probate Court's execution of the order. Therefore, because petitioners failed to properly perfect their appeal by submitting a substantial portion of the record relevant to the appeal, the motion justice should have dismissed their appeal rather than giving petitioners a second bite of the apple.

■ We will briefly comment on petitioners' contention that because the transcripts were privately commissioned they were not part of the Probate Court record. Mr. Griggs relied on § 33–22–19.1(b), which allows a party to bring a stenographer, "at the party's own expense, to a probate court proceeding," regardless of whether the probate clerk has recorded the proceedings. A Probate Court judge must be clear when privately commissioned transcripts are to be made a part of the record. The best way to ensure that the transcripts are officially included is for the Probate Court judge to mark the transcripts as an exhibit. It is unclear, based on the record before us, whether the transcripts ever were actually made a part of the record. As discussed above, this factor does not affect our decision to dismiss petitioners' appeal for failing to perfect the record because the certified record, notwithstanding the transcripts, was not complete until nearly eight months after the Probate Court executed the order dismissing the petition for guardianship. Therefore, intervenors' motion to dismiss should have been granted on the grounds that petitioners failed to have a complete and certified copy of the Probate Court record transmitted to the Superior Court.

Because the petitioners failed to submit a sufficient Probate Court record to the Superior Court within the statutory deadline, the appeal was not perfected, thus the Superior Court lacked jurisdiction to hear the petitioners' appeal. As a result, we do not reach the issue of whether chapter 15 of title 33 requires a DMAT completed by the proposed ward's treating physician to accompany a petition for guardianship. This issue is saved for another day or, preferably, for the General Assembly to clarify. For these reasons, we affirm the judgment of the Superior Court granting the intervenors' motion to dismiss but on different grounds.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The

record shall be remanded to the Superior Court.